**Affirmed and Opinion filed August 30, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00001-CV

---

## JOLIE CHU, Appellant

### V.

## WINDERMERE LAKES HOMEOWNERS ASSOCIATION, INC., Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2019-76668**

---

### OPINION

In this appeal by a homeowner from a declaratory judgment, the trial court ruled that an amendment to a subdivision's declaration of covenants, conditions, and restrictions—which established a minimum duration for leasing, essentially banning "short-term leasing"—was valid and enforceable against the homeowner.

We affirm.

## I. STANDARD OF REVIEW

We review de novo a case tried on agreed facts, as here. *Andriukaitis-Woodlands Med. Office, I, LLC v. Woodlands-N. Houston Heart Ctr., PA*, No. 14-13-00612-CV, 2014 WL 4854590, at *2 (Tex. App.—Houston [14th Dist.] Sept. 25, 2014, pet. denied) (mem. op.).[1]  Agreed facts are binding on the parties and courts. *Id.* "In an appeal from a trial court's judgment on an agreed case, the only issue on appeal is whether the trial court properly applied the law to the agreed facts." *Taylor v. First. Cmty. Credit Union*, 316 S.W.3d 863, 866 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## II. BACKGROUND

In 2014 and 2016, appellant Jolie Chu purchased two homes in the Windermere Lakes subdivision.  Chu bought, improved, and furnished her homes with the intent to lease them for short terms of thirty days or less.

Appellee Windermere Lakes Homeowner's Association, Inc. (the HOA) is a mandatory governing body over the Windermere Lakes subdivision.  A "Declaration of Covenants, Conditions and Restrictions" (the Declaration) establishes a private contractual relationship between the homeowners and the HOA.  The Declaration was filed and recorded in 1998.  It provides that no activity "which is not related to single family residential purposes[] shall be performed on any Lot."

---

[1] The parties signed a Rule 11 agreement that the case be tried under Rule 263 of the Texas Rules of Civil Procedure as an agreed case with stipulated facts. *See* Tex. R. Civ. P. 263. Although the record does not contain an agreed statement of facts certified by the trial court, as required by the rule, we may treat the case as one under Rule 263. *See Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 866 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  The agreed facts appear in the record, and the parties agree on appeal that the case is governed by Rule 263.

Article X of the Declaration provides that it may be amended by an instrument signed by owners of not less than fifty-one percent of the lots. In 2019, about 79% of the members of the HOA voted to approve an amendment to the Declaration that barred leasing for less than 180 days, among other specific requirements, including that the owner and occupants intend for the occupants to remain on the lot and that it become the occupants' place of residency. Chu stipulated to the validity of the voting procedures for the amendment, did not challenge the validity of the voting procedures or individual votes for the amendment, and agreed that all procedures required for the amendment were followed.

Chu sued the HOA, seeking a declaratory judgment that the amendment could not be enforced against her based on the theory that the HOA could not "impose new restrictions which take away settled rights under prior restrictions." The parties agreed to the facts recited above and submitted to the court copies of the Declaration and the amendment, along with memoranda of law.

The trial court signed a final declaratory judgment, ruling that the amendment was enforceable against Chu and that Chu shall comply with the amendment. Chu appeals.

### III.   ANALYSIS

Chu presents a single issue on appeal: "Can a majority of owners within a subdivision adopt new restrictive covenants which deprive existing owners of their rights under prior restrictive covenants?" Chu contends that she had the right to lease her properties for short-term rentals before the amendment, and the amendment destroyed this right. She contends that Texas courts have enforced amendments to deed restrictions on owners only when the amendments removed restrictions or furthered the original plan of development. She contends that, under

3

the common law developed in other states, new restrictions on land use adopted by amendment cannot be enforced against existing owners. Finally, she contends that the amendment is void as against public policy because it tramples on the constitutional rights of tenants.

## A. *Poole Point* and *Adlong*

After the parties filed briefing in this case, two Texas courts of appeals addressed similar issues. *See Poole Point Subdivision Homeowners' Ass'n v. Degon*, No. 03-20-00618-CV, 2022 WL 869809 (Tex. App.—Austin Mar. 24, 2022, pet. filed) (mem. op.); *Adlong v. Twin Shores Prop. Owners Assoc.*, No. 09-21-00166-CV, 2022 WL 869801 (Tex. App.—Beaumont Mar. 24, 2022, pet. filed) (mem. op.). Both courts upheld amendments to restrictions that imposed minimum-stay requirements for leasing, effectively banning short-term leasing.

In *Poole Point*, the original restrictions provided that the lots should be used for single-family residential use and that no business or commercial activity could be conducted except "this shall not be read to prevent the leasing of a single family dwelling." *Poole Point*, 2022 WL 869809, at \*1. After the plaintiffs purchased their property and began short-term leases, the owners passed an amendment to ban short-term leases. *See id.* at \*1–2. The trial court ruled for the plaintiffs, and the Austin court of appeals reversed, thus upholding the amendment. *Id.* at \*4.

The Austin court of appeals reasoned that to amend deed restrictions, three conditions must be met: (1) the instrument creating the original restrictions must establish the right to amend and the method of amendment; (2) the amendment must be a correction, improvement, or reformation of the agreement rather than its complete destruction; and (3) the amendment must not be illegal or against public policy. *See id.* at \*3; *accord Hanchett v. East Sunnyside Civ. League*, 696 S.W.2d 613, 615 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (noting the three

4

conditions). Like *Chu*, the plaintiffs did not challenge the first element. *See Poole Point*, 2020 WL 869809 at *3. Regarding the second element, the court held that the amendment did not completely destroy the deed restrictions even though the restrictions had specifically authorized leasing. *See id.*; *see also Couch v. S. Methodist Univ.*, 10 S.W.2d 973, 974 (Tex. Comm'n App. 1928) ("Now, a change of these conditions in any or all respects is not a destruction of the contract, nor does it change the essential nature of the same. It is still a deed of conveyance."). Regarding the third element, the court held, "Modifications to deed restrictions that impose greater restrictions are not prohibited by law when they are consistent with the overall plan of development." *Poole Point*, 2022 WL 869809, at *4. The amendment "reinforced the existing residential use and occupancy restriction and the prohibition against commercial activities." *Id.* The court noted that the Supreme Court of Texas had already signaled its approval of amendments such as these. *See id.* (citing *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 277 (Tex. 2018)).[2] And, the court reasoned that because the plaintiffs purchased their property knowing that the restrictions could be amended, they "could not reasonably have expected that there could never be restrictions placed on the right to lease their residence." *Id.* at *3 n.1.

In *Adlong*, the restrictions in effect when the plaintiffs purchased their home provided that no lot could be used except for residential purposes. *Adlong*, 2022 WL 869801, at *2. After the plaintiffs purchased their property and leased it for

---

[2] In *Tarr*, the supreme court held that short-term rentals did not violate restrictive covenants that limited the use of properties to "residential purposes." *Tarr*, 556 S.W.3d at 291–93. The court noted that neither the plaintiff nor the homeowners' association in that case "attempted to amend the deed restrictions to specify a minimum duration for leasing—an option available to both of them under the deed's amendment provisions." *Id.* at 277. The court made a similar observation in another case: "The Association is not without recourse against conduct of short-term tenants [because] the deed restrictions permit the neighborhood to amend the covenants to restrict leasing." *JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 188 (Tex. 2022).

short terms, the subdivision homeowners amended the restrictions to require leases to be a minimum of six months, thus banning short-term rentals. *See id.* at \*4. The trial court granted a declaratory judgment in favor of the property owners' association, and the Beaumont court of appeals affirmed, thus upholding the amendment. *Id.* at \*1.

The plaintiffs in *Adlong* raised many of the same arguments as Chu raises in this appeal. *See id.* at \*4–5. In an extensive opinion that surveyed various decisions by the Supreme Court of Texas and other courts of appeals, the Beaumont court held that "amended or modified restrictive covenants may be enforced, against owners who acquired their property before the amendment, even if they did not vote for the amendment, when the original restrictions provided a method for amendment, that method was followed, and the owners were on constructive notice the restrictions could be amended by amendment." *Id.* at \*11. The court reasoned that no Texas precedent supported the plaintiffs' argument that amendments could only apply to new property owners and could not be "enforced in a manner that would take away the rights of owners who bought before the amendment." *Id.*

Considering these decisions and the authorities cited therein, we agree with our sister courts that validly passed amendments to restrictions, for which purchasers had constructive notice of the possibility of amendment, should be enforced if the amendment is not illegal or against public policy. *See Poole Point*, 2022 WL 869809, at \*3–4; *Adlong*, 2022 WL 869801, at \*9, \*11.

**B.  Reasonableness**

Chu urges this court to follow decisions from courts outside Texas, which Chu contends "employ one variety or another of a fairness or reasonableness analysis, which asks whether, when compared to the original restrictions, an

amendment is new and unexpected."[3]  Although we decline to adopt such a test when the Supreme Court of Texas has not yet done so, the supreme court has noted that covenants generally will be enforced if they are "within reasonable bounds." *Tarr*, 556 S.W.3d at 280.  Even if a "reasonableness" test is employed here, the amendment is reasonable because it reinforces the existing single-family residential use restriction; thus, it is consistent with the general plan or scheme of development for the subdivision.  *See Poole Point*, 2022 WL 869809, at *4 ("The minimum duration requirement created by the Amendment reinforced the existing residential use and occupancy restriction and the prohibition against commercial activities."); *Adlong*, 2022 WL 869801, at *11 ("[A]mended restrictive covenants may be enforced against an owner who bought property before the amendment, when the amendment is consistent with the general plan or scheme of development for the subdivision.").

## C.  Public Policy

Finally, Chu contends that the "physical, continuous occupancy requirement" is against public policy because it is inconsistent with legislative enactments and constitutional law.  Chu complains of a provision in the amendment requiring the owner and occupants to intend for the occupants to remain on the lot and that it become the occupants' place of residency.

"Courts should refrain from nullifying a transaction because it is contrary to public policy, 'unless the transaction contravenes some positive statute or some well-established rule of law.'"  *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 338 (Tex. 2020) (quoting

---

[3] *See Armstrong v. Ledges Homeowners Ass'n, Inc.*, 633 S.E.2d 78 (N.C. 2006); *see also Wilkinson v. Chiwawa Cmty. Ass'n*, 327 P.3d 614 (Wash. 2014); *McMillan v. Iserman*, 327 N.W.2d 559 (Mich. App. 1982).

*Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001)). Courts generally consider the Legislature's statutory enactments to be expressions of public policy. *Id.* at 339. The Legislature "has spoken extensively about restrictive covenants, both upholding their enforcement and setting limits." *Id.* "These legislative decisions to regulate and even prohibit some restrictive covenants—but not restrictive [covenants] like this one—militate against this Court's exercise of its common-law authority" to invalidate a restrictive covenant. *Id.* Thus, we find unpersuasive Chu's contention that the Legislature's imposition of a hotel occupancy tax on short-term rentals, *see* Tex. Tax Code § 156.001(b), or that the Legislature has generally regulated the area of residential tenancy without restricting short-term rentals, *see* Tex. Prop. Code ch. 92, shows that a restrictive covenant banning short-term leasing is against public policy.

Chu references authority that state courts may not enforce restrictive covenants that violate the Fourteenth Amendment to the United States Constitution. *See Shelley v. Kraemer*, 334 U.S. 1, 20–21 (1948) (invalidating state court's enforcement of restrictive covenants that denied equal protection of the laws based on race). But Chu cites no authority invalidating a restrictive covenant concerning short-term rentals, or any other type of restrictive covenant, based on constitutional limitations other than racial discrimination. Even if a state actor could not impede certain constitutional rights of individuals utilizing short-term rentals, *see Zaatari v. City of Austin*, 615 S.W.3d 172, 202 (Tex. App.—Austin 2019, pet. denied), a restrictive covenant with similar provisions is not necessarily unconstitutional. *See Covered Bridge Condo. Ass'n, Inc. v. Chambliss*, 705 S.W.2d 211, 213–14 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (holding that precedent—regarding unconstitutional city ordinance restricting cohabitation of certain family members, in violation of fundamental right under the

8

Fourteenth Amendment of family members to live together—was "inapplicable" to an age-restriction covenant that operated to prevent a parents' child to live with them because "the restriction is created by a private contract, not by a governmental ordinance or law").

Chu has not shown that the amendment—which adds a restrictive covenant setting the minimum term for leases and requiring owners and occupants to intend for the occupants to make the property their home—is unenforceable because it is against public policy.

## IV. CONCLUSION

Chu's sole issue is overruled. The trial court's judgment is affirmed.


/s/     Ken Wise
         Justice


Panel consists of Justices Wise, Poissant, and Wilson.